[No. 14433-2-I.  Division One.  July 23, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. MARY ALICE STOCK, *Appellant.*

468

*Robert Beaty, R. M. Holt,* and *O'Brien, Pflug & Holt,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Stuart Heath, Deputy,* for respondent.

RINGOLD, A.C.J.—At a bench trial Mary Alice Stock was found guilty of first degree theft for embezzling $84,414.04 from Drllevich Construction Company. We consider the six different issues she raises on appeal and affirm.

Stock was employed as a part–time bookkeeper for Drllevich Construction Company from June 1976 to September 1982.[1] Val Drllevich, the president of the company, would sign company checks in blank and give them to Stock with instructions that she pay company bills with them. Over a 4–year period, Stock deposited $84,414.04 into her personal account by forging Drllevich's signature on blank company checks or by inserting her name as payee. Stock altered the company books to conceal this unauthorized activity.

### PROBABLE CAUSE TO ISSUE SEARCH WARRANT

Stock contends that evidence obtained by use of a warrant to search Seattle–First National Bank should have been suppressed because the warrant was issued without probable cause. The warrant was based upon the following affidavit by Vernon Miller, a Kent police officer:

On 12–6–82 check numbered 4011 dated 12–3–82 was deposited into Seattle First National Bank, Wilderness Village Branch as indicated by "Deposit my account, Mary A. Stock" endorsement on back and above bank stamp on back of check in question.

On 12–15–82 check numbered 4012 dated 12–14–82 was also deposited into same bank also indicated by

---

[1] No error was assigned to the trial court's findings of fact and they are considered verities on appeal. *State v. Bowers,* 36 Wn. App. 119, 672 P.2d 753 (1983).

"Deposit my account, Mary A. Stock" endorsement on back and above bank stamp on check in question.

Mary A. Stock is the suspect who worked for Drllevich Construction Inc., as sole bookkeeper and made out all checks for the company but as company policy demanded she left signature space blank for Val Drllevich to sign.

Per Drllevich Stock allegedly has written large amounts of checks to herself and when the cancelled checks came back to the company she would destroy the checks to keep them from being noticed by Drllevich.

The above two checks were returned after suspect terminated employment which alerted Val Drllevich that Stock had taken the checks and forged his name and deposited funds in her personal account at above location without his knowledge or permission.

Stock asserts that there is no basis for Drllevich's information or sufficient facts to determine his reliability. Thus Stock argues that the 2–prong test required by *Aguilar–Spinelli*[2] has not been satisfied.

According to the affidavit, Stock made out the checks for Drllevich's signature. When the two checks returned to the company stamped "Deposit my account, Mary A. Stock," Drllevich presumably would have the basis of knowledge to determine his name had been forged on the checks and had been deposited in Stock's account without authorization.

■ The reliability prong of *Aguilar–Spinelli* retained in *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984) is also satisfied here. Drllevich is a citizen informant, therefore the necessary showing of reliability is relaxed. *State v. Riley,* 34 Wn. App. 529, 663 P.2d 145 (1983).

When the informant is an ordinary citizen, as opposed to the criminal or professional informant, and his identity is revealed to the issuing magistrate, intrinsic indicia of the informant's reliability may be found in his detailed description of the underlying circumstances of the crime observed or about which he had knowledge. If the underlying circumstances are sufficiently detailed to satisfy the

---

[2]*Spinelli v. United States,* 393 U.S. 410, 413, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

first prong of *Aguilar–Spinelli,* they may themselves provide "built in credibility guides to the informant's reliability," thus fulfilling the second prong as well.

(Citations omitted.) *State v. Northness,* 20 Wn. App. 551, 557, 582 P.2d 546 (1978); *accord, Riley.*

Here, enough detail was provided in the affidavit to satisfy the basis of knowledge and reliability requirement of *Aguilar–Spinelli.* There was probable cause to issue the warrant.

### HANDWRITING EXEMPLAR

During the pretrial motions before Judge Tuai, Stock's counsel argued that a handwriting exemplar should be suppressed because it was obtained in the absence of defense counsel, after Stock had requested her right to remain silent and have counsel present. Judge Tuai ruled that the exemplar was admissible, and at trial Judge Coleman refused to disturb Judge Tuai's ruling.

Prior to being charged Stock retained counsel. Stock's counsel informed the police that he was representing Stock and requested that the police contact him first if they wished to question or arrest his client. The police picked up Stock and did not inform her counsel. Stock exercised her right to remain silent and requested counsel be present. The police, without waiting for counsel, had Stock supply them with a handwriting exemplar.

■ This police action is to be deplored. There was no exigent circumstance which mandated the police proceed without defense counsel. The police should have contacted Stock's counsel and waited for him to arrive. The protections afforded by the United States Constitution's Fifth and Sixth Amendment rights to counsel as indicated in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), however, cannot be the basis for suppression of nontestimonial evidence. *See Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 718 P.2d 789 (1986). This rule has specifically been applied to handwriting exemplars. *Gilbert v. California,* 388 U.S. 263, 18 L. Ed.

2d 1178, 87 S. Ct. 1951 (1967), cited with approval in *State v. Franco,* 96 Wn.2d 816, 827, 639 P.2d 1320 (1982).

In *Gilbert,* 388 U.S. at 266–67, the Court held that a "mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside" the protection of the Fifth Amendment privilege against self–incrimination. Further, the Court explained with respect to the Sixth Amendment right to counsel:

> The taking of the exemplars was not a "critical" stage of the criminal proceedings entitling petitioner to the assistance of counsel. Putting aside the fact that the exemplars were taken before the indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial. If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, "the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross–examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts."

(Citations omitted.) *Gilbert,* 388 U.S. at 267.

Nor does Const. art. 1, § 9 preclude the admission of the handwriting exemplar. *See Heinemann.* The trial court did not err by admitting the exemplar into evidence at trial.

### SPEEDY TRIAL

Pursuant to CrR 3.3(d)(8), the State moved for a 5–day extension. Judge Elston ordered that:

> the date set for the expiration of the time in which this case may be tried should be, and the same hereby is, extended until November 8, 1983[,] because of unforeseen and unavoidable circumstances beyond control of the parties (Prosecuting Attorney has been in trial since October 21, 1983 in a trial not expected to require over

2–3 days and has thus been, and continues to be, unavailable).

CrR 3.3(d)(8) states in part:

When a trial is not begun on the date set because of unavoidable or unforeseen circumstances beyond the control of the court or the parties, the court, even if the time for trial has expired, may extend the time within which trial must be held for no more than 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing the reasons for the extension. . . .

■ A motion for continuance is addressed to the sound discretion of the trial court. *State v. Barker,* 35 Wn. App. 388, 396–97, 667 P.2d 108 (1983). The standard of review is whether the trial court committed a manifest abuse of discretion. *State v. Alford,* 25 Wn. App. 661, 611 P.2d 1268 (1980), *aff'd sub nom. State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981).

"Self–created hardship is not an excuse for violating mandatory rules." *State v. Mack,* 89 Wn.2d 788, 794, 576 P.2d 44 (1978). A general allegation of docket congestion is also insufficient to provide a good excuse for delay under the speedy trial rule. *Mack.*

■ In similar circumstances to the case sub judice, however, the courts have found that a specific unforeseen difficulty in the prosecuting attorney's trial scheduling is sufficient cause to grant a 5–day extension under CrR 3.3(d)(8). *State v. Brown,* 40 Wn. App. 91, 94–95, 697 P.2d 583, *review denied,* 103 Wn.2d 1041 (1985); *State v. Palmer,* 38 Wn. App. 160, 162–63, 684 P.2d 787 (1984); *see also State v. Eaves,* 39 Wn. App. 16, 691 P.2d 245 (1984) (codefendant's counsel unavailability unforeseen). The trial court here did not abuse its discretion in granting the continuance.

### JURISDICTION TO ISSUE SEARCH WARRANT

After the information charging Stock with first degree theft was filed in superior court, the State obtained a search warrant from District Court Judge Killien. Stock

contends that once her case was filed in superior court, the district court lost jurisdiction to issue warrants in her case. She argues that the check records obtained from the bank pursuant to the warrant should be suppressed.[3]

Superior courts have original jurisdiction over all felony cases. Const. art. 4, § 6. Article 4, section 10 of our constitution provides in part: "The legislature . . . shall prescribe by law the powers, duties and jurisdiction of justices of the peace: *Provided,* That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts of record . . ."[4] The Legislature enacted former RCW 3.66.060,[5] which provides in part: "The justice court shall have jurisdiction: . . . (2) to sit as committing magistrates and conduct preliminary hearings in cases provided by law; (3) concurrent with the superior court of a proceeding to keep the peace in their respective counties."

Stock argues that the district court's power to issue warrants in felony cases trenches upon, or takes away from the jurisdiction of the superior court, in violation of Const. art. 4, § 6. This argument is fallacious. RCW 3.66.060 grants concurrent jurisdiction and does not deprive the superior courts of any power. Both the district and superior courts have the power to issue warrants. JCrR 2.10; CrR 2.3.

JCrR 2.03(d)(2) states in part, "Jurisdiction vests in the

---

[3]The State responds that Stock has not cited authority for her argument. Relying on *State v. DeCuir,* 19 Wn. App. 130, 135, 574 P.2d 397 (1978), the State argues that Stock's argument should not be considered on appeal. Stock has provided ample argument and cited the state constitution and court rules to support it. This is sufficient for consideration of her argument on appeal, *cf. In re Marriage of Low,* 44 Wn. App. 6, 720 P.2d 850 (1986); otherwise, no appellant would ever be able to present a case of first impression in the appellate courts.

[4]All references to justices of the peace shall be construed as referring to district court judges. *See* RCW 3.30.015.

[5]RCW 3.66.060 was amended by Laws of 1983, 1st Ex. Sess., ch. 46, § 176, p. 1805; Laws of 1984, ch. 258, § 44, p. 1316.

superior court at the time the information is filed."[6] Stock contends that this language implies that district courts lose all authority over a case, including power to issue warrants, once the information is filed.

In response to this contention, Judge Coleman stated:

> The rules that talk in terms of the fact that the Superior Court has jurisdiction over a matter once an Information is filed, relates to matters concerning the trial of the case itself, it does not deprive the District Justice Court of its jurisdiction which would parallel that of the Superior Court. District Courts can, upon proper application, issue search warrants and while, again, recognizing that it would have been preferable to have handed [sic] all discovery through the criminal rules relating to discovery, there is not, in this court's view, a basis to indicate the procedure utilized here was contralegal and, therefore, subject to suppression.

There are no Washington cases on point; however, this court's interpretation of the rules is in accord with that of Judge Coleman.

---

[6] JCrR 2.03(d) provides in part:

"(1) When a felony complaint is filed, the court may conduct a preliminary hearing to determine whether there is probable cause to believe that the defendant has committed a felony. If the court finds probable cause, the court shall bind the defendant over to the superior court. If the court binds the defendant over, or if the parties waive the preliminary hearing, an information shall be filed without unnecessary delay.

"(2) If at the time a complaint is filed with the district court the defendant is detained in jail or subjected to conditions of release, the time from the filing of the complaint in district court to the filing of an information in superior court shall not exceed 30 days plus any time which is the subject of a stipulation under subsection (d)(3). If at the time the complaint is filed with the district court the defendant is not detained in jail or subjected to conditions of release, the time from the defendant's first appearance in district court which next follows the filing of the complaint to the time of the filing of an information in superior court shall not exceed 30 days, excluding any time which is the subject of a stipulation under subsection (d)(3). If the applicable time period specified above elapses and no information has been filed in superior court, the case shall be dismissed without prejudice. The court shall file the transcript in superior court promptly after notice that the information has been filed. The transcript shall include, but not be limited to, the bond and any exhibits filed in the court of limited jurisdiction. Jurisdiction vests in the superior court at the time the information is filed."

### EXCLUSION OF WITNESSES

Stock next argues that the State failed to make a timely disclosure that two bank employees would testify at trial. These employees authenticated some of the evidence collected by the search warrants. The name of the State's expert was not revealed until the morning of the trial. Defense counsel, however, knew the nature of the expert's testimony before trial. Stock argues that the trial court erred by not excluding the testimony of these witnesses. Stock refused the court's offer of a continuance, insisting that exclusion of the witnesses was the only remedy.

■ Stock relies on *State v. Price,* 94 Wn.2d 810, 620 P.2d 994 (1980) to support her argument. In *Price,* the court stated:

We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. Such unexcused conduct by the State cannot force a defendant to choose between these rights. *The defendant, however, must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights.*

(Italics ours.) *Price,* at 814.

Stock has failed to bear her burden of proof. No evidence was presented to the trial court demonstrating she was prejudiced by the State's action. The only claim of prejudice here is the right to a speedy trial. There is no showing that counsel was unprepared to meet the witnesses' testimony. The trial court, therefore, did not err by allowing the witnesses to testify. *See Price,* at 815.

### SUPPRESSION HEARING

Stock contends that the trial court erred by not entering written findings of fact and conclusions of law relating to a

suppression hearing. Under CrR 3.6,[7] at the conclusion of a suppression hearing a court is required to enter findings of fact and conclusions of law. The purpose of findings of fact and conclusions of law is to aid an appellate court on review. *State v. Agee,* 89 Wn.2d 416, 573 P.2d 355 (1977).

■ Here the trial court gave the reasons for its decisions concerning the suppression hearing on the record.[8] With regard to the issue of probable cause to issue the search warrant the only evidence was Officer Miller's affidavit. There was no testimony taken or any disputed issues of fact. Under these circumstances, Stock was not prejudiced by the lack of written findings of fact or conclusions of law and there is no ground for reversal. *See Agee,* at 419.

The judgment and sentence is affirmed.

GROSSE and PEKELIS, JJ., concur.

---

[7]CrR 3.6 provides: "At the conclusion of a hearing, upon a motion to suppress physical, oral or identification evidence the trial court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) the court's findings as to the disputed facts; and (4) the court's reason for the admissibility or inadmissibility of the evidence sought to be suppressed."

[8]The record reflects that the State apparently was prepared to submit findings of fact and conclusions of law to the trial court, but must have failed to follow through.