[No. 16128-8-I.  Division One.  January 21, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. LESLIE
WAYNE BERLIN, *Appellant.*

*C. M. Hassenstab* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Ron Doersch* and *Matthew L. Vadnal, Deputies,* for respondent.

RINGOLD, A.C.J.—The defendant, Leslie Wayne Berlin, was convicted by a jury of possession of marijuana. He appeals the judgment and sentence, arguing that the trial court erred by not suppressing evidence obtained with a warrant allegedly lacking probable cause. Berlin also argues that the police trespassed onto his property in violation of the Fourth Amendment to obtain evidence and violated the "knock and announce" rule when the police served the warrant.

On February 28, 1984, Detective Jerry Whetstine of the Snohomish County Sheriff's Office presented the following affidavit to obtain a search warrant:

> During the past week of February 20th to the 27th of 1984 affiant received information from three different sources (concerned citizens) stating that an individual by the name of Leslie L. [*sic*] Berlin had a marijuana grow operation going in the above described residence. The concerned citizens further stated that they had seen the operation within the past week of the 20th of February

and that the suspect had approximately 30 plus plants in the shed right behind the house that is apparently attached to part of the residence. The plants are approximately 3 to 4 feet high being run by three lights. The concerned citizens further stated that there was a window that was covered by a blanket so nobody could see in the shed.

On 2–28–84 affiant conducted surveillance on the residence and observed the shed in the back of the house and observed bright lights coming out of the shed around the blanket that was covering the window to the shed.

This was the same shed that concerned citizens had stated that the marijuana was growing. Affiant has checked and found that the concerned citizens involved had no criminal background, came forward voluntarily, gave the appearance of being an honest citizen, and gave to affiant his or her name, phone number, and address to affiant but wishes to remain anonymous for fear of retaliation. Affiant has been a Deputy Sheriff for approximately 7 years and is currently assigned to the narcotics unit, and has had extensive experience and training in identification of marijuana and marijuana grow operations. Affiant has attended D.E.A. narcotics school and attended several drug seminars.

Due to the information provided by concerned citizens affiant believes that the marijuana grow operation will be found in the above described residence.

### PROBABLE CAUSE

Berlin contends that the affidavit does not provide sufficient information concerning the citizen informants to satisfy either the reliability or basis of knowledge prongs of the *Aguilar–Spinelli*[1] test. Berlin first argues that Detective Whetstine's statement that each informant has "the appearance of being an honest citizen" is a conclusory statement similar to the statement "A reliable informant who has proven to be reliable in the past . . .", which was held unacceptable in *State v. Woodall,* 100 Wn.2d 74, 75, 666 P.2d 364 (1983).

---

[1]*Spinelli v. United States,* 393 U.S. 410, 413, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

■ The reliability requirement of *Aguilar–Spinelli,* retained in *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984), is generally relaxed where the informant is an ordinary citizen. *State v. Stock,* 44 Wn. App. 467, 722 P.2d 1330 (1986). "Although our courts have relaxed the necessary showing of reliability for a citizen informant, the informant must still supply information to support an inference that the informant is telling the truth." *State v. Huft,* 106 Wn.2d 206, 211, 720 P.2d 838 (1986).

Evidence of past reliability is not required from a citizen informant, because a citizen who is an eyewitness or a victim lacks the opportunity to establish a record of previous reliability. *State v. Riley,* 34 Wn. App. 529, 533, 663 P.2d 145 (1983). When a citizen informant's identity is revealed to the issuing magistrate, the indicia of reliability requirement is satisfied if the informant provides a detailed description of the underlying circumstances of the crime observed or about which the informant has knowledge. *Stock,* at 470–71; *State v. Northness,* 20 Wn. App. 551, 557, 582 P.2d 546 (1978).

In every Washington appellate case concerning citizen informants where the court held the reliability prong was satisfied, the citizen's identity was revealed to the magistrate. *E.g., State v. Stock, supra; State v. Sheldon,* 38 Wn. App. 195, 196, 684 P.2d 1350 (1984); *State v. Hauser,* 19 Wn. App. 506, 511 n.1, 576 P.2d 420, *review denied,* 90 Wn.2d 1022 (1978), *cert. denied,* 440 U.S. 960, 59 L. Ed. 2d 773, 99 S. Ct. 1503 (1979); *State v. Braun,* 11 Wn. App. 882, 886, 526 P.2d 1230 (1974). In *State v. Huft, supra* at 211, the Supreme Court cited the anonymity of the citizen informant as one factor for finding no showing of reliability.

In *State v. Chatmon,* 9 Wn. App. 741, 742, 515 P.2d 530 (1973) an unidentified citizen informant came into the police department and told police that he saw the defendant with marijuana. The informant refused to identify himself stating that he did not want to get involved. *Chatmon,* at 742. The court held that there was insufficient indicia of the informant's reliability. *Chatmon,* at 748.

Before reaching this result the court explained:

> To establish the reliability of a citizen informant, and thus to fulfill the second prong of the *Aguilar* test, it is only necessary for the police to interview the informant and ascertain such background facts as would support a reasonable inference that he is "prudent" or credible, and without motive to falsify. *United States v. Harris,* [403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971)]. In making this determination, the police may justifiably assume that the ordinary citizen who has seldom or never reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. *United States v. Harris, supra (see also* the dissenting opinion of Harlan, J., 403 U.S. at 599).
>
> In making this evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, his reliability could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous.

(Footnote omitted.) *Chatmon,* at 748.

Detective Whetstine attempted to satisfy the standard set forth in *Chatmon* by stating in his affidavit:

> Affiant has checked and found that the concerned citizens involved had no criminal background, came forward voluntarily, gave the appearance of being an honest citizen, and gave to affiant his or her name, phone number, and address to affiant but wishes to remain anonymous for fear of retaliation.

Unlike *Chatmon* the informants have divulged their names and addresses to the police. Detective Whetstine checked their backgrounds and determined they had no criminal record. He also gave a legitimate reason why the citizens wished to remain anonymous.

"Great deference is accorded the issuing magistrate's determination of probable cause." *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985). Doubts should be resolved in favor of the warrant's validity. *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). Though reasonable minds could differ as to the reliability of the citizens here, there is

enough information from which the magistrate could find sufficient indicia of reliability.

Next Berlin contends that there is no indication that the citizen informants had a basis of knowledge to distinguish between marijuana and any other type of plant. In *State v. Matlock,* 27 Wn. App. 152, 154, 616 P.2d 684 (1980), the court reviewed an affidavit in which a police officer had seen plants "which appeared to be marijuana." The court held that:

> [T]he fatal flaw in this affidavit is the lack of any information to support [the officer's] claim the plants he saw were marijuana. Absent some showing that Officer Richart had the necessary skill, training or experience to identify marijuana plants on sight, the affidavit was insufficient to establish probable cause for the issuance of a search warrant.

(Footnote and citation omitted.) *Matlock,* at 155–56.

As in *Matlock* there is no information in the affidavit here which describes the informants' skills at distinguishing marijuana from other plants. Affidavits, however, must be tested in a commonsense manner rather than hypertechnically. *Partin,* at 904.

Unlike *Matlock,* the statements here were unequivocal that Berlin had a marijuana growing operation in his shed. Three different citizen informants supplied the same information. Additionally Detective Whetstine, who stated in the affidavit that he "had extensive experience and training in identification of marijuana and marijuana grow operations", interviewed the three citizens. He was convinced by what they described that Berlin was growing marijuana in his shed.

Certainly, the better practice would be for the affidavits to recite how an informant is qualified to identify the observed plants as marijuana. Again, mindful of the deference given to magistrates who issue warrants and that doubts must be resolved in favor of the warrant's validity, it was not error to find that the basis of knowledge prong of *Aguilar–Spinelli* was satisfied. *See State v. Cord, supra;*

*State v. Partin, supra.*

## TRESPASS

The affidavit for the search warrant contains information gathered by Detective Whetstine after he conducted surveillance of Berlin's residence. Detective Whetstine testified at the suppression hearing that this surveillance was made from an adjacent property. He stated that he stood behind a 5–foot–high fence, which he correctly assumed was the property line.

Berlin testified that the lights which Detective Whetstine claims to have seen could only be viewed from inside Berlin's property. The trial court, however, found that Detective Whetstine had not been on Berlin's property.

■ If Detective Whetstine did not trespass onto Berlin's property there was no Fourth Amendment violation. The trial court's finding that Detective Whetstine did not enter Berlin's property is based upon a credibility determination which this court cannot overturn. *State v. Tocki,* 32 Wn. App. 457, 461, 648 P.2d 99, *review denied,* 98 Wn.2d 1004 (1982).

## KNOCK AND ANNOUNCE

Finally, Berlin asserts that the police violated RCW 10.31.040, which requires the police to knock on a door and identify themselves before entering to serve a warrant.[2] When the police executed the warrant on February 28, 1984, they knocked on Berlin's front door and announced, "This is the Snohomish County Sheriff's Office, we have a warrant to search your residence—open up." Berlin's wife came to the door and asked who was there. The police reannounced themselves and Mrs. Berlin said "wait a minute." One detective responded "No, right now." The detective heard no response. After about 30 seconds, he opened the door, entered and restated their identity and purpose.

---

[2]RCW 10.31.040 provides: "To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

■ To enter the house without consent, the police must announce their identity, demand admittance, state the purpose of their demand, and be explicitly or implicitly denied admittance. *State v. Coyle,* 95 Wn.2d 1, 6, 621 P.2d 1256 (1980). The question here then is whether the police were implicitly denied admittance. "What constitutes refusal is 'a factual determination to be made primarily by the trial court.'" Utter, *Survey of Washington Search and Seizure Law,* 9 U. Puget Sound L. Rev. 1, 64 (1985) (citing *State v. Jones,* 15 Wn. App. 165, 167, 547 P.2d 906 (1976)); *see also State v. Woodall,* 32 Wn. App. 407, 411, 647 P.2d 1051, 1054 (1982) (trial court's determination was supported by substantial evidence and no abuse of discretion was found), *rev'd on other grounds,* 100 Wn.2d 74, 75, 666 P.2d 364 (1983).

In similar cases, appellate courts have upheld entries after a wait as little as 10 seconds. *State v. Jones, supra* (10 seconds); *State v. Lomax,* 24 Wn. App. 541, 603 P.2d 1267 (1979) (30 seconds); *State v. Haggarty,* 20 Wn. App. 335, 579 P.2d 1031 (1978) (30 seconds).

The police testified that they had been told Berlin might have weapons and that he had a history of violence.[3] These facts may not suffice to fulfill the State's burden to show exigent circumstances necessary to waive compliance with the knock and announce rule. *See State v. Coyle, supra.* They do however bear upon the reasonableness of the length of time the police waited after announcing themselves.

The police waited for Mrs. Berlin to respond. When she responded, but did not open the door, they waited an additional 30 seconds. There is substantial evidence to support the trial court's finding of reasonableness and compliance with the knock and announce rule. *See Jones.*

---

[3]During the search of the residence the police found in the top drawer of a dresser an automatic pistol and a .410 shotgun with a sawed–off stock and barrel.

The judgment and sentence is affirmed.

WILLIAMS and PEKELIS, JJ., concur.