[No. 20170-1-I. Division One. October 10, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. NARCISO ORTIZ, *Appellant.*

*Julie A. Kesler, Scott Engelhard,* and *Helen Anderson* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney, Robert A. Carmichael, Deputy,* and *Ronald C. Hardesty, Special Deputy,* for respondent.

SWANSON, J.—Narciso Ortiz appeals from the judgment and sentence entered following his conviction for third degree assault. Ortiz contends that the trial court erred in refusing to give a proposed instruction regarding the reliability of an informant's tip.

On January 1, 1987, at about 2 a.m., Dustin Hurlbut, a patrol sergeant with the Whatcom County Sheriff's Department, responded to a radio report of a fight at the Rustler's Inn near Lynden. When Hurlbut entered the tavern, several officers, including Deputy Ortner, were already there.

Patrons had informed Ortner about a fight. Ortner told Hurlbut that he had seen a minor injury that "could have involved a knife." After about 5 to 10 minutes, the officers decided to leave, as their presence was "agitating a number of people" and no one was willing to "articulate" precisely what had happened. As Hurlbut was leaving the tavern, one of the officers shouted that another fight had started. The officers went back inside, but did not see anything.

As Hurlbut began to leave a second time, he stopped to chat with Jerry Darkis, a member of the Whatcom County Search and Rescue team. Darkis, who was not wearing a uniform, had been riding with Deputy Ortner. Hurlbut heard someone say to Darkis several times something to the effect that the "woman in the red coat going to the door was the one with the knife." Darkis confirmed what Hurlbut heard. Hurlbut saw only one person in a red coat and followed her outside.

Hurlbut caught up to the woman, later identified as Paula Ortiz, the appellant's sister, and asked her to stop so that he could talk to her about the disturbance in the tavern. As Paula turned away and continued on, Hurlbut "took her arm" just above the elbow. Paula became agitated, started yelling, and attempted to get away. During

the ensuing scuffle, the appellant, Narciso Ortiz, kicked Hurlbut in the face. Hurlbut subsequently arrested Narciso, who was charged with third degree assault. No knife was recovered.

Jerry Darkis testified that he had been talking with Hurlbut in the tavern when a patron grabbed his arm, pointed to a woman in a red coat, and said that she had just pulled a knife on someone. Darkis, who was unable to see the patron, followed Hurlbut outside and watched the altercation with Paula. He then observed the appellant yell, "quit messin' with my sister" and kick Hurlbut.

Paula Ortiz testified that she spent the evening drinking at the Rustler's Inn with her brother, parents, and friends. She was unable to recall a fight and claimed she did not realize that Hurlbut was a police officer. She acknowledged that she was intoxicated.

The appellant testified that his recollection of the incident was "so–so" and that he had been "pretty hammered." He stated that he had been outside, talking to his mother, when all of a sudden he saw someone on the ground whom he believed to be his mother. Ortiz said that he kicked the officer because he thought Hurlbut was hurting his mother.

At the end of trial, defense counsel proposed the following instruction:

> An officer may use information supplied by another in deciding to detain a person if there is some indication that such information is reliable.

Counsel argued that in determining whether Paula's detention was lawful, the jury needed to be instructed on the law pertaining to the use of informants' tips. The trial court rejected the instruction and gave several general instructions on investigatory detentions. A jury found Ortiz guilty of third degree assault, and he was sentenced to 10½ months in jail.

The sole issue on appeal is whether the trial court erred in refusing to give Ortiz's proposed instruction. Ortiz was convicted of third degree assault pursuant to former RCW 9A.36.030(1)(a):

> Every person who, under circumstances not amounting to assault in either the first or second degree, shall be guilty of assault in the third degree when he:
> (a) With intent to prevent or resist the execution of an lawful process or mandate of any court officer *or the lawful apprehension or detention of himself or another person shall assault another* . . .

(Italics ours.) The State must establish that the apprehension or detention is lawful. *State v. Hoffman,* 35 Wn. App. 13, 16, 664 P.2d 1259 (1983). The lawfulness of the detention is determined under an objective standard; the defendant's subjective belief is irrelevant. *See State v. Goree,* 36 Wn. App. 205, 209, 673 P.2d 194 (1983), *review denied,* 101 Wn.2d 1003 (1984). As there is no contention that the police had probable cause to arrest Paula, her detention was lawful only if it occurred pursuant to a valid investigatory stop.

Absent probable cause to arrest, police may briefly detain and question a person if they have "a well founded suspicion based on objective facts that he is connected to actual or potential criminal activity." *State v. Sieler,* 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); *see also Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The validity of an investigatory stop involves a 2–step analysis: (1) whether the initial detention was justified; and (2) whether the detention was reasonably related in scope to the circumstances justifying the interference. *See State v. Williams,* 102 Wn.2d 733, 739, 689 P.2d 1065 (1984). The challenge in this appeal involves only the propriety of the initial detention.

In many cases, an investigatory stop results from firsthand observations made by the detaining officer. However, an officer's "well founded suspicion" supporting a valid *Terry* stop may also be based on information gathered from another person. *See generally State v. Kennedy,* 107 Wn.2d 1, 726 P.2d 445 (1986). An informant's tip may justify a detention

if it possesses sufficient indicia of reliability, *i.e.,* the circumstances suggest the informant's reliability or there is some corroborative observation which suggests the presence of criminal activity or that the information was obtained in a reliable fashion.

*State v. Kennedy, supra* at 7; *see also State v. Sieler, supra; State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975); *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

Under the circumstances of this case, however, Ortiz's proposed instruction was incomplete and misleading. As noted by the trial court, the tavern patron here was an "informant" only in the most general sense of the word, *i.e.,* a person who provides information to the police. The required showing of reliability is relaxed in situations involving "citizen" informants, such as the tavern patron, rather than professional informants from the "criminal milieu." *See generally* 1 W. LaFave, *Search and Seizure* § 3.4 (2d ed. 1987); *State v. Kennedy, supra* at 8; *State v. Berlin,* 46 Wn. App. 587, 731 P.2d 548 (1987). Moreover, additional considerations arise when the informant is a victim or an eyewitness:

> Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the "reliability" requirement might be further relaxed.

*State v. Chatmon,* 9 Wn. App. 741, 748 n.4, 515 P.2d 530 (1973); *cf. State v. Northness,* 20 Wn. App. 551, 582 P.2d 546 (1978) (discussing four general categories of informants).

Veracity analysis is of diminished importance because the witness–victim, unlike the typical informant, has but one opportunity to supply information to the police and thus lacks a "track record." *State v. Berlin, supra* at 590; *State v. Riley,* 34 Wn. App. 529, 533, 663 P.2d 145 (1983); 1 W. LaFave, *supra* at 716. Nor is corroboration of information supplied by a witness–victim always essential. Such an

informant, absent circumstances to the contrary, is generally presumed to be reliable. *State v. Sheldon,* 38 Wn. App. 195, 196, 684 P.2d 1350 (1984); *State v. Wakeley,* 29 Wn. App. 238, 241, 628 P.2d 835, *review denied,* 95 Wn.2d 1032 (1981); 1 W. LaFave, *supra* at 718.

In addition, a witness–victim, as in the instant case, often provides information under circumstances in which an investigation of the informant's reliability is impracticable:

> Frequently, police officers, upon arriving at the scene of a crime, are hurriedly given valuable information by an eyewitness. Based upon this information, hot pursuit results. Later, when the officers return to the scene, the eyewitness who gave the information may have long since departed. To require in these tumultuous circumstances that the officers stop and ascertain the name, address, and full identification of the informant is totally unreasonable. To do so would frequently negate the value of the information imparted to the officers.

*State v. Williams,* 638 S.W.2d 417, 420 (Tenn. Crim. App. 1982). As one commentator observes, even in situations where no such urgency is present,

> the more fundamental point is that when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.

1 W. LaFave, *supra* at 718.

The witness–victim's basis of knowledge is also of reduced significance as such informants "by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it." *United States v. Bell,* 457 F.2d 1231, 1239 (5th Cir. 1972); 1 W. LaFave, *supra* at 730. Consequently, while there must still be sufficient indicia of reliability in cases involving witness–victims, reliability frequently inheres in the very nature of the information conveyed and the surrounding circumstances.

Ortiz's reliance on *State v. Lesnick, supra,* and *State v. Sieler, supra,* is misplaced. In *Lesnick,* an anonymous caller supplied police with the license number of a van allegedly carrying illegal "punchboards." In *Sieler,* a man reported observing what he believed to be a drug transaction. In each case, our Supreme Court held that investigatory stops based on the informants' tips were unjustified absent circumstances suggesting the informant's reliability or corroborative observations that indicated the presence of criminal activity. In both cases, however, the investigatory detentions were based *solely* on uncorroborated information supplied by the informant. *See generally Campbell v. Department of Licensing,* 31 Wn. App. 833, 644 P.2d 1219 (1982) (conclusory tip from unidentified passing motorist that defendant was driving under influence of alcohol insufficient to justify investigatory stop when officer followed suspect and observed no suspicious conduct).[1]

In the instant case, however, the "informant's" tip was but one of the surrounding circumstances pertinent to a determination of the detention's validity. As the court observed in *State v. Lesnick, supra* at 944:

[N]o single rule can be fashioned to meet every conceivable confrontation between the police and citizen. Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in light of the particular circumstances facing the law enforcement officer.

In determining the lawfulness of the detention, the jury here had to consider the surrounding circumstances and the facts known to all of the officers, including the officers' prior knowledge of a fight, observation of a minor injury,

---

[1]An uncorroborated tip possesses sufficient indicia of reliability where "(1) the source of the information is reliable *and* (2) the report contains enough objective facts to justify the pursuit and detention of the suspect." (Footnote omitted.) *Campbell v. Department of Licensing,* 31 Wn. App. 833, 835, 644 P.2d 1219 (1982).

and the fact that a suspect, pointed out by an apparent eyewitness, was in the process of leaving the tavern. Ortiz's proposed instruction placed undue emphasis on the information supplied by the patron, implying that detention had to be based solely on the "informant's" tip.

■ In addition, the instructions as given were sufficient to permit Ortiz to argue his theory of the case. A party is entitled to have its theory set forth in instructions; however, the trial court has considerable discretion in the number and wording of the instructions. *State v. Dana,* 73 Wn.2d 533, 536, 439 P.2d 403 (1968). Instructions are sufficient if they correctly state the law, are not misleading, and permit counsel to argue the case satisfactorily to the jury. *State v. Mark,* 94 Wn.2d 520, 526, 618 P.2d 73 (1980). Instruction 8 provided:

A detention is lawful if the initial interference with the suspect's freedom of movement was justified at its inception and if the detention was reasonably related in scope to the circumstances which justify the interference in the first place.

Instruction 9 informed the jury:

The detention was justified if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

These instructions permitted Ortiz to argue that the detention was unreasonable if based solely on the information provided by an anonymous celebrant at a crowded New Year's Eve party. When read together, these instructions correctly informed the jury that it was necessary to consider all of the surrounding circumstances in determining whether the detention was reasonable.

Because the instructions as given were sufficient, the trial court did not err in refusing Ortiz's proposed instruction.

Judgment affirmed.

WILLIAMS and WEBSTER, JJ., concur.