FILED
COURT OF APPEALS
DIVISION II
2015 MAR 31 AM 8:35
STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45001-1-II |
| Respondent, | |
| v. | |
| MICHAEL A. JONES, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michael Jones appeals from his jury conviction for use of drug paraphernalia and bail jumping. Jones argues that probable cause did not exist to issue the search warrant for his girlfriend's parents' home, and that the court violated his public trial rights by addressing peremptory challenges off the record. We reject Jones's arguments and affirm the trial court.

FACTS

On October 18, 2012, someone burglarized Brian and Trish Settlemyre's home[1] and stole various items, including several guns. Deputy Ryan P. Tully responded to the Settlemyres' home. The next day, while Deputy Tully was present at the Settlemyres' home, a person called Brian on the phone and stated that he or she had heard Tina Falkner talking about "ripping off a place near the golf course where there were a lot of guns." Clerk's Papers (CP) at 20. This person repeated the same story to the police. Fearing retaliation, he or she asked to remain nameless. According to Deputy Tully, this person had "provided reliable information on another case." CP at 20.

---

[1] For clarity, we refer to Brian and Trish Settlemyre by their first names. We intend no disrespect.

Because the burglar had not completely ransacked their home, the Settlemyres believed that the burglar knew what they had and where it was. Jones matched this description. Brian and Jones's father were friends, Jones had been in the Settlemyres' home in the past, and Jones and Falkner were in a relationship.

Deputy Tully and another officer went to Falkner's parents' home where Jones and Falkner had been staying for the prior couple weeks. The police made contact with Jones who "appeared very nervous" and "seemed to be trying to get [the police] to leave." CP at 20. Three days later, the police returned to the Falkners' home and saw that the windows had been covered up and the porch door had been locked.

The police subsequently received a call from another person. This person reported that he or she had "heard from at least two people that [Jones] was going around town bragging about the burglary. [Jones] was telling people that he knew about the guns and other items because his family is close to Brian's." CP at 21. In addition, Jones tried to sell the person an item similar to one stolen from the Settlemyres' home. Like the first informer, this person feared retaliation and asked to remain nameless. This person had also "previously provided [information] to [the police] that has proved to be reliable." CP at 21.

On October 25, 2012, the police applied for and obtained a warrant to search the Falkners' residence for any items that had been stolen from the Settlemyres. During the search, the police discovered a bag containing burnt butter knives,[2] plastic tubes, and baggies containing a substance later identified as methamphetamine.

---

[2] The butter knives were used to smoke marijuana by heating the knives and pressing marijuana between them.

## PROCEDURAL HISTORY

The State charged Jones with possession of methamphetamine, use of drug paraphernalia, and bail jumping.[3] Jones moved to suppress the evidence obtained during the search of the Falkner residence. He specifically argued that the police informants were not reliable and that the information in the search warrant affidavit did not establish probable cause. The trial court heard argument and denied Jones's motion, ruling that a reasonable magistrate could have found probable cause. The trial court did not state its reasoning.

During voir dire, the parties questioned the jurors in open court. The parties then exercised their peremptory challenges outside the hearing of the prospective jurors, at the bailiff's table. A written record of the peremptory challenges was filed on the same day.

Following a trial, the jury found Jones guilty of using drug paraphernalia and bail jumping, and hung on the methamphetamine possession charge. Jones appeals his convictions.

## ANALYSIS

I.    SEARCH WARRANT

Jones argues that the search warrant for the Falkners' home was invalid because the magistrate relied on informants who were not reliable and because the warrant affidavit failed to establish probable cause. For the first time on appeal, Jones also argues that the magistrate relied on an informant with no demonstrated basis of knowledge, and that no nexus existed between the items sought and the Falkners' home. We hold that the trial court did not err by finding the search warrant affidavit established probable cause.

---

[3] Jones failed to appear for a hearing while he was on bail, which was the basis for the bail jumping charge.

A.     Standard of Review

We review a magistrate's issuance of a search warrant under an abuse of discretion standard. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). We generally give great deference to the magistrate's decision. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Yet, if the affidavit offers no "substantial basis for determining probable cause," deference to the magistrate is inappropriate. *State v. Lyons*, 174 Wn.2d 354, 363, 275 P.3d 314 (2012).

At a suppression hearing, the trial court acts in an "appellate-like capacity." *Neth*, 165 Wn.2d at 182. Because we perform the same review of the magistrate's actions as the trial court, we will defer to the magistrate but *not* to the trial court. *Neth*, 165 Wn.2d at 182.

A magistrate should issue a search warrant only if there is probable cause to believe the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched. *Neth*, 165 Wn.2d at 182. "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The magistrate is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). A motion to suppress will fail if a reasonable magistrate could find probable cause. *State v. Gentry*, 125 Wn.2d 570, 606, 888 P.2d 1105 (1995). "All doubts are resolved in favor of the warrant." *State v. Anderson*, 105 Wn. App. 223, 228, 19 P.3d 1094 (2001).

4

B.     Informants – *Aguilar-Spinelli* Test

Probable cause for a search warrant may be based on information from an informant. *State v. Gaddy*, 152 Wn.2d 64, 71, 93 P.3d 872 (2004). For an informant's tip to create probable cause requires two conditions:

> (1) the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.

*State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984) (citing *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 413, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Gates*, 462 U.S. 213). This two part test encompasses a "basis of knowledge" prong and a "veracity" prong, respectively. *Jackson*, 102 Wn.2d at 437. Here, both prongs are satisfied.

1.     Basis of Knowledge

Typically, the basis of knowledge prong is satisfied by information that the informant personally saw the facts asserted and is passing on firsthand information. *State v. McCord*, 125 Wn. App. 888, 893, 106 P.3d 832 (2005). In the present case, the first informant personally heard Falkner talk about the burglary. Jones does not challenge the first informant on the basis of knowledge prong. Rather, Jones argues that the second informant did not have a basis of knowledge because the second informant merely repeated hearsay obtained from other people, namely "Jones was 'going around town bragging about the burglary.'" Br. of Appellant at 18 (quoting CP at 21).

If an informant reports hearsay, the knowledge prong may still be satisfied if there is sufficient information that the hearsay establishes a basis of knowledge. *Jackson*, 102 Wn.2d at 437-38. Here, the affidavit indicates that "[t]he citizen also informed [the requesting officer] that [Jones] tried to sell an item to them that is similar to one stolen from the Settlemyre residence." CP at 21. It is unclear from the plain language whether the word "them" is used as a gender-neutral way to refer to the second informant himself or herself (*see* CP at 21 (referring to the informant as "they")), or whether the word refers to the people whom Jones was allegedly bragging to. A reasonable magistrate could infer that the affidavit meant that the second informant had *personally* been approached by Jones to buy an item similar to one stolen in the burglary. This information would corroborate the second informant's hearsay. Drawing all doubts in favor of the warrant, we hold that the basis of knowledge prong is satisfied.

2.    Veracity

The veracity test differs depending on the informant's status. *State v. Ibarra*, 61 Wn. App. 695, 699, 812 P.2d 114 (1991). The courts distinguish between professional informants and citizen informants, and whether the informant's identity is known to the police. *Ibarra*, 61 Wn. App. at 699. Typically, citizen informants are subject to a less stringent test for veracity. *Ibarra*, 61 Wn. App. at 699. But "Washington requires a heightened showing of credibility for citizen informants whose identity is known to police but not disclosed to the magistrate." *State v. Atchley*, 142 Wn. App. 147, 162, 173 P.3d 323 (2007). This standard exists because of the risk that the informant may be an "'anonymous troublemaker.'" *State v. Northness*, 20 Wn. App. 551, 557, 582 P.2d 546 (1978) (quoting *United States v. Darensbourg*, 520 F.2d 985, 988 (5th Cir. 1975)).

When a citizen informant remains unidentified to the magistrate but known to the police, the affidavit must show that "the informant is truly a citizen informant who is not involved in the criminal activity or motivated by self-interest." *Cole*, 128 Wn.2d at 287. The affidavit must support a reasonable inference that the informant's information is credible and that the informant has no motive to falsify. *Cole*, 128 Wn.2d at 287-88.

This burden is not onerous. Where a citizen wishes to remain anonymous, "'his reliability could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous.'" *State v. Berlin*, 46 Wn. App. 587, 591, 731 P.2d 548 (1987) (quoting *State v. Chatmon*, 9 Wn. App. 741, 748, 515 P.2d 530 (1973)). However, it is not enough for the affidavit to merely recite that an informant is credible. *Aguilar*, 378 U.S. at 114. Similarly, it is not enough for an affidavit to recite that an informant has proven to be reliable in the past because "'[r]eliable'. . . is a mere conclusion of the affiant which could mean a number of things." *State v. Woodall*, 100 Wn.2d 74, 76, 666 P.2d 364 (1983).

Here, both of the informants identified in the search warrant affidavit were "confidential citizen[s]" who were not known to the magistrate but were known to the police. CP at 20, 21. The affidavit further states that both informants had provided the police with reliable information on other occasions, and that the informants wanted to remain anonymous out of fear of retaliation.

In relying on all the facts and circumstances presented in the search warrant affidavit, a reasonable magistrate could determine that the informants were reliable. Here, unlike *Chatmon*, the informants here were not *truly* anonymous. *Cf. Chatmon*, 9 Wn. App. at 742, 748 (holding that there was insufficient indicia of an informant's reliability where the informant was unknown

7

to both magistrate and police). Both informants were known to the police and had provided information to the police on previous occasions. These facts reduce the risk that the informants were "anonymous troublemakers." The risk is further reduced by the fact that the informants had an innocuous reason for remaining anonymous—they feared retaliation. Furthermore, unlike *Berlin*, the informants were not involved in suspicious behavior themselves. *Cf. Berlin*, 46 Wn. App. at 588-89, 591-92 (holding that magistrate could find sufficient indicia of reliability of confidential informants who divulged their names and addresses to the police even though informants did not indicate why they were present at defendant's marijuana grow operation). Rather, the informants obtained their information innocently: the first informant overheard Falkner planning a burglary, while the second informant was approached by Jones. Finally, the informants had both previously provided information that the police had found reliable.

In short, nothing in this case "promoted suspicions that the informants were more than merely civic-minded citizens." *State v. Rodriguez*, 53 Wn. App. 571, 576, 769 P.2d 309 (1989). Accordingly, while reasonable minds could differ on whether the informants were reliable, we have independently reviewed the search warrant and defer to the magistrate's determination.

C.      Probable Cause

"Probable cause is established in an affidavit supporting a search warrant by setting forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986).

Here, a reasonable magistrate could conclude from the informants' tips, the police investigation, and other facts that Jones was probably involved in criminal activity. Jones's girlfriend, Falkner, planned to steal from "a place . . . where there were a lot of guns," and numerous guns were in fact stolen from the Settlemyres' home. CP at 20. The Settlemyres' home was not "completely torn apart," but appeared to be burglarized by someone familiar with the layout of the home and the locations of valuables and firearms. CP at 20. Jones possessed this knowledge. He acted suspiciously around the police. Yet, around other people, Jones bragged about the burglary and tried to sell items that were similar to the stolen items. When taken together, these facts would justify a reasonable magistrate in determining there was probable cause to believe that Jones had committed a crime.

D.    Nexus

Probable cause cannot exist without both "'a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

Probable cause to believe a defendant committed a crime does not always, by itself, create probable cause to search that defendant's home. *See Thein*, 138 Wn.2d at 148-50. Yet, certain circumstances may allow the inference that evidence may be found in the defendant's residence. For example, as the *Thein* court recognized, "personal items of continuing utility" that are "not inherently incriminating" might likely be kept in a defendant's home. 138 Wn.2d at 149 n.4. And as we have previously noted in *State v. McReynolds*:

9

> Here, the question is whether, *assuming a not too long passage of time* since the crime, it is proper to infer that the criminal would have the fruits of his crime in his residence, vehicle or place of business. Perhaps because stolen property is not inherently incriminating in the same way as narcotics and because it is usually not as readily concealable in other possible hiding places as a small stash of drugs, courts have been more willing to assume that such property will be found at the residence of the thief, burglar or robber.

104 Wn. App. 560, 569-70, 17 P.3d 608 (2000) (quoting WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d), at 381-84 (3d ed. 1996) (footnotes omitted)) (emphasis added). We have such a case here. First, the burglary occurred temporally close to the search warrant application and execution. Second, the stolen items included various power tools and guns—items that are not inherently incriminating and not as readily concealable as controlled substances. A reasonable magistrate could conclude that if Jones had indeed burglarized the Settlemyres' home, he would be keeping the fruits of the crime at the place he stayed, the Falkner residence. Drawing all doubts in favor of the warrant, we hold that a nexus exists between the place to be searched and the items being sought.

II. PUBLIC TRIAL

Jones argues that peremptory challenges are an integral part of jury selection, and that holding peremptory challenges at the bailiff's table outside the earshot of the venire and spectators violated his public trial rights. The State argues that peremptory challenges do not implicate public trial rights. We agree with the State and reject Jones's public trial arguments.

A. Standard of Review

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless application of the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d

254, 258-59, 906 P.2d 325 (1995), supports closure of the courtroom. Whether a courtroom closure violated a defendant's right to a public trial is a question of law we review de novo. *Wise*, 176 Wn.2d at 9.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). First, we consider whether the particular proceeding at issue "falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right." *State v. Wilson*, 174 Wn. App. 328, 337, 298 P.3d 148, *petition for review filed*, No. 88818-3 (Wash. May 16, 2013). Second, if the proceeding at issue does not fall within a specific protected category, we determine whether the proceeding implicates the public trial right using the experience and logic test adopted in *Sublett*, 176 Wn.2d at 73. *Wilson*, 174 Wn. App. at 335.

B.      Peremptory Challenges

Jones argues that the trial court violated his right to a public trial by allowing peremptory challenges at the bailiff's table, which was outside the earshot of the venire and spectators. Our recent caselaw established that exercising preemptory challenges does not implicate the public trial right. *State v. Marks*, __ Wn. App. __, 339 P.3d 196, 198-99 (2014), *petition for review filed*, No. 911487 (Wash. Dec. 29, 2014); *State v. Dunn*, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015). Therefore, we hold that the trial court did not violate

Jones's public trial right by allowing counsel to make peremptory challenges at the bailiff's table, outside the earshot of the venire and courtroom spectators. Because the exercise of peremptory challenges does not implicate the public trial right, no *Bone-Club* analysis is required. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.